International Coal and Mining Company v. Fred Reeble.

ASSUMED RISK—*doctrine of, defined.* In general, the employe is held to assume the usual, ordinary risks incidental to his employment, and the risk from defective machinery and appliances may come within the rule of assumed risk if such defects are known to the employe and he afterwards voluntarily undertakes or

continues in the employment. Ordinarily the question of assumed risk is for the jury, and the trial court would not be justified in taking a case from the jury by a peremptory instruction unless it can be said that all reasonable minds would agree that under the evidence offered the risk was assumed by the servant.

Action in case for personal injuries. Appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1907. Reversed, with finding of facts. Opinion filed September 13, 1907.

WISE & McNULTY, for appellant.

THOMAS R. MOULD, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action on the case brought by appellee against appellant to recover damages for injuries sustained by appellee while in the employ of appellant as a mule-driver in a coal mine operated by appellant.

The amended declaration on which the case was tried contains one count and for cause of action alleges, that defendant negligently ordered the plaintiff to drive an unfit mule, one that was vicious and was in the habit of kicking, balking and running away, and that the injury was the "direct result of defendant's negligent conduct in ordering said vicious mule to be used." The defendant filed the plea of not guilty. The case was tried by a jury which returned a verdict for the plaintiff, assessing his damages at $200. From a judgment on the verdict the defendant appealed. Numerous errors have been assigned, but in the conclusions reached by this court, after a careful examination of the record and due consideration of the argument of counsel, it will only be necessary to discuss the one assigned which challenges the action of the trial court in refusing the peremptory instruction asked by the defendant at the close of all the evidence.

It appears from the evidence that appellee was about twenty-four years old, that he was a miner of

seven years' experience, and had worked as a driver in coal mines for more than three years. For three months prior to the injury he worked as a driver for the appellant company and drove the alleged vicious mule "Dan." After a lay-off of two or three weeks he applied to the appellant for employment in the mine and was told he could have work as a driver. He began work on the morning of July 6, 1906, driving "Dan" as formerly in moving coal cars as required in the operation of the mine. He was injured July 7th while hauling a loaded trip of cars through one of the entries to the switch. It does not clearly appear in the evidence, but as we understand appellee's claim, his injuries were caused by being caught between the top of the loaded car and the low part of the roof at the point referred to as the horse-back.

To maintain the action alleged it was necessary to prove that when appellee was injured he was acting under a specific order or command, to use the mule "Dan," that the said mule was dangerous to drive, that appellant knew it and that appellee did not know and appreciate the danger to which he was exposed in driving the mule, and that the injury was caused by the known dangerous propensities of the mule.

There is no evidence that the appellee was acting in obedience to a specific order or command which would relieve him from the risk incidental to his employment. He was employed as a driver of the mule "Dan," that was so stated and understood at the time he began work. It was his contract voluntarily entered into. He asked for work and it was given him. He was told to take the gray mule "Dan," and did so without objection or protest. There was no order about it. He was permitted to do what he had solicited. From what took place and from what was said between them the most that may be said is that appellant's manager offered employment upon condition that appellee would use the particular mule named, and that appellee accepted the employ-

ment so conditioned. Later in the day, according to appellee's testimony, after he had made several trips in driving, he complained to the boss, Mr. Morris, that the mule was kicking and that he did not want to drive lest he might get hurt. He says that Morris told him that the mule would be all right in a couple of days and to stay with him. This was not an order or command by Morris, nor can it be reasonably inferred that appellee so interpreted it. At most it was but an expression of opinion by Morris, that the mule would improve with service and a request that appellee continue in the work undertaken. The declaration does not count upon liability for negligence of appellant to use reasonable care in supplying the appellee with reasonably safe appliances and a reasonably safe place to work, though the doctrine of liability under such charge is discussed in argument here. Again, if it be assumed that appellee was ordered to drive the mule and did so in obedience to such order, he still acted within a risk assumed by him, for under the evidence, he must be held to have known and appreciated the danger to which he was exposed in driving the mule. He had worked with it three months at the same mine, in the same employment. He knew, for he so testifies, that the mule was in the habit of kicking, balking and running away, and whatever the danger to a person in driving him, appellee must have known from three months' experience, better than anybody else. The danger was obvious, clearly understood and appreciated, and though appellee had been specially ordered as he contends, the action would be barred, for he knowingly exposed himself to the danger and thereby assumed the risk. In general the employe is held to assume the usual, ordinary risks incidental to his employment, and the risk from defective machinery and appliances may come within the rule of assumed risk if such defects are known to the employe and he afterwards voluntarily undertakes or continues in the employment. Illinois Terminal Rail-

road Company v. Thompson, 112 App. 467. Ordinarily the question of assumed risk is for the jury and the trial court would not be justified in taking the case from the jury by peremptory instruction unless it can be said that all reasonable minds would agree that under the evidence offered the risk was assumed by the appellee. This we think was the condition of the evidence appearing of record in this case. It is to be observed that the injury sustained was not what might reasonably have been anticipated or feared from the alleged dangerous character of the mule; nor indeed does it appear from the evidence that the injury was caused in the manner alleged in the declaration, viz.: "That the mule without any fault on the part of the plaintiff suddenly balked, kicked, knocked and threw the plaintiff on top of said loaded cars, so as to wedge plaintiff between the coal on said cars and the roof of said entry," etc. The only evidence as to the manner of the injury is found in the testimony of appellee. He says: "The day I was hurt I had made seven, eight or nine, something like that, trips. I was coming and there was another driver in front of me and I came to that low place and the mule stopped and kicked me on the legs; he kicked two or three times and then a big lunge, and I was on the chain and it threw me up against the horse-back on top of the car. I had one foot on the chain like this and one on the car. One of my hands was on the car and the other on the mule. * * * The mule got me right up against the coal in the roof on the horseback. * * * I do not know how I ever got off the box." In cross-examination he says: "The mule made a lunge and straightened the chains. It threw me against the horseback and the loaded car. The roof was seven feet high and it threw me up there against it. It was not the kicking but it was the lunge of the mule. I do not claim the mule kicked me up there. * * * It was not the mule that kicked me on top the car, but it was the sudden lunge after he had kicked me that

threw me on top of the car." From this it does not appear that the injury to appellee was due to the mule's vicious habits of kicking and running away which were the chief and only habits of which any evidence was offered. It is alleged, but not proven, that he was in the habit of balking. If the appellee was injured as he testifies, by being thrown to the top of the car, it was done by the balking and not the kicking of the mule. It is alleged that appellant negligently ordered appellee to drive a mule that was in the habit of kicking, balking, and running away, and there is proof tending to show that the mule was in the habit of kicking and running away but none that he was in the habit of balking, so that appellee's injury, caused wholly by the balking of the mule, was not within the risk assumed by appellant in giving the alleged negligent order.

We are of opinion that the court should have given the peremptory instruction to the jury to find for the defendant. The judgment of the Circuit Court will therefore be reversed with a finding of facts.

*Reversed, with finding of facts.*

We find as facts, to be incorporated with the judgment, that the appellant was not guilty of negligence as alleged in the declaration, and that appellee assumed the risk of danger to which he was exposed in driving the mule in question.